## Wytheville.

### JONES v. THE COMMONWEALTH.

July 24, 1884:

1. CRIMINAL PROCEEDINGS—*Indictment.*—An indictment in the language of the act (Acts 1877–8, ch. 7, § 8), interdicting intermarriage between a negro and a white person, is sufficient.
2. IDEM—*Separation of Jury.*—Where the offence tried is not punishable with death, or ten years' confinement in the penitentiary, an objection that the jury were allowed to separate has no merit, though the court may have ordered that they be boarded at a hotel during the trial.
3. IDEM—*Absence of Prisoner.*—It is not error wherefor a verdict of guilty will be set aside, that in the absence of the prisoner, on the morning of the second day of the trial, the jury is called and sent to their room to consider of their verdict, the jury afterwards returning into court, and in the presence of the prisoner, rendering their verdict. *Lawrence's Case*, 30 Gratt. 845.
4. IDEM—*Corpus delicti—Onus probandi.*—To sustain a charge under said section 8, the commonwealth must prove an actual marriage duly celebrated between the parties by a person duly authorized and qualified to celebrate it ; or that the parties consummated the marriage in the *bona fide* belief that the person celebrating it was legally authorized and qualified to celebrate it according to the law of Virginia ; and also the color and the identity of the parties; and this must be fully proved by the best evidence attainable.

Error to judgment of circuit court of Montgomery county, affirming on error a judgment of the county court of said county, rendered 2d February, 1884, on an indictment for felony against Isaac Jones, whereby he was sentenced to imprisonment in the penitentiary for the term of two years.

The indictment charged that Isaac Jones, a negro, did, in said county, on 1st day of February, 1883, feloniously intermarry with one Martha Auther *alias* Martha A. Gray, a white person.

The indictment was under chapter 7, section 8, Acts 1877–8, which is as follows: "Any white person who shall intermarry with a negro, or any negro who shall intermarry with a white person, shall be confined in the penitentiary not less than two nor more than five years."

To the judgment of the circuit court affirming the judgment of the county court, the prisoner obtained a writ of error and *supersedeas*. The opinion states the facts and the points raised.

*J. C. Taylor* and *G. G. Junkin*, for the plaintiff in error.

*Attorney-General F. S. Blair*, for the commonwealth.

FAUNTLEROY, J., delivered the opinion of the court:

On the trial of the case the prisoner demurred to the indictment, which demurrer was overruled by the court, and this is assigned as the first ground of error.

The indictment is in the very language of the statute, and the demurrer was, we think, properly overruled.

After the verdict, the prisoner moved the court to set aside the verdict and grant him a new trial, on the ground that the verdict was contrary to the evidence; that it was not justified by the evidence; because of the separation of the jury during the trial; and because the prisoner was not present when the jury was called and sent to their room on the last day  The objection, that the jury was not placed in the custody of the sheriff and were allowed to be separated during the trial, is without merit; the law does not require such custody or forbid such separation. Acts 1877–8, page, 341, chapter 17, section 10, provides, "When, in a criminal case, the jury are kept together beyond the day on which they are empanelled, the court shall direct its officers to furnish them with suitable board and lodging while so confined. The expenses thereof, not exceeding the rate of one dollar per entire day for each juror, shall be

paid out of the treasury, when allowed by the court; but, when the punishment cannot be death, or confinement in the penitentiary ten years, the jury shall not be kept together, but shall be treated as jurors in civil cases, unless the court direct otherwise."

The punishment in this case could not be ten years ; and the certificate of facts, by the court, expressly says, that the court " *did not* direct the sheriff to keep them together, nor make any order that said jury should be kept together." So there is no error in this assignment.

Nor do we think there was error in the fact stated in the certificate of facts by the court, that the said jury, though kept, as ordered, at said hotel, was permitted to separate, and did separate at will, and were not in the custody of the sheriff; and the next morning returned into court, and the prisoner not being in court at the time, the said jury was called and sent to their room, and afterwards, the prisoner having in the meantime been brought into court, the jury returned into the court-room, and in the presence of the prisoner returned their verdict. The verdict was read in the prisoner's presence. No proceedings prejudicial to him, or that could possibly be prejudicial to him, occurred in his absence. The jury had, the evening before, in the prisoner's presence, been sent to their room to consider their verdict; the case was closed ; the evidence, *pro* and *con,* ended, the argument ended, and the case submitted ; and on the morning in question the court called them and sent them to their room, for the purpose ordered the evening before, in the presence of the prisoner, to consult or consider of their verdict. In the case of *Lawrence* v. *Commonwealth,* 30th Gratt. 845, Judge Moncure, in delivering the opinion of the court, said : " The prisoner was, no doubt, present in court on the morning of the second day of the trial when the jury were brought into court by the sheriff, who had them in charge, and again sent out of court to consult of their verdict. But, whether he was or not, they might have been carried to their room, which was the proper place for them until they agreed on their verdict, by

the sheriff who had them in charge, and without any order of court for the purpose. Of course such an order, even though made without the personal presence of the prisoner, would not be an error in the proceedings."

The plaintiff in error was convicted, in the county court of Montgomery, upon an indictment charging that he, Isaac Jones, a negro, did, in the county aforesaid, on the —— day of February, 1883, feloniously intermarry with one Martha Auther, *alias* Martha A. Gray, a white person, against the peace and dignity of the commonwealth. He stands thus convicted of a crime, not only against the law of Virginia, but against the just sensibilities of her civilization. The question for determination by this court is, does the evidence, as certified in the record, support and justify the verdict of his conviction?

The prisoner, by his plea of not guilty, clothed himself with the presumption of innocence, and the burden of proof is on the prosecutor. The commonwealth is bound to prove the *corpus delicti*—in this case, the actual marriage duly celebrated between the parties by a person duly qualified and authorized to celebrate it; or that the parties *consummated* the marriage in the *bona fide* belief that the person celebrating the marriage was legally qualified and authorized to celebrate the marriage according to the law of Virginia; and the color and identity of the parties. Code 1873, chapter 104, § 7.

On the trial of the case, the commonwealth, to sustain the issue on her part, proved that a license was obtained by the prisoner to marry Martha Gray from the clerk of the county court of Montgomery county on the 15th February, 1883, and introduced the license, together with the list of statistics required by law to be taken by the clerk when the license is issued, and the certificate of one C. S. Scheaffer, that on the 15th February, 1883, at Montgomery county, Virginia, he united in marriage the *above named* and *described* parties under authority of the annexed license; and the commonwealth further proved that on the day mentioned by said Scheaffer in his certificate, said Scheaffer performed the ceremony of marriage

between the parties named in the said license at the colored Baptist church near Christiansburg, in the county of Montgomery. There was no proof that said Scheaffer was qualified to perform the rites of matrimony; and this was all the proof of the marriage. There was no proof of any *consummation* or of cohabitation by the parties to the ceremony, either with or without full belief by the parties so married, or either of them, that they had been lawfully joined in marriage. In 1 Minor's Institute, 249, under the head of "The proof to be made of marriage in criminal prosecutions" he says: "The uniform practice of a century has settled that in prosecutions for *bigamy,* and in actions for *adultery,* it is necessary to prove an *actual marriage* valid or avoidable, and not yet avoided. The proof must be either by some witness present at the marriage, by the marriage register, and proof of the identity of the parties."

It is true that the proof by the commonwealth did show that the prisoner, Isaac Jones, was a negro, and that he was the same Isaac Jones who had obtained the marriage license, and who was married by C. S. Scheaffer, as set forth in his certificate, but the proof as to the identity and color of the woman is vague and uncertain.

"It must not be forgotten that the books furnish deplorable cases of the conviction of innocent persons from want of sufficiently certain proofs either of the *corpus delicti* or of the identity of the prisoner." (3 Greenleaf's Evidence, 32.)

The commonwealth is bound to prove the color of the woman—in this case, that she was a *white* person. Yet, in the list of *statistics,* which was put in proof by the commonwealth as part of the marriage register, the said Martha Ann Gray is described as "*black;*" and the celebrant of the ceremony, in his certificate, at the bottom of this list of statistics, which he was required by law to make, certifies "that on the 15th day of February, 1883, at Montgomery county, Virginia, I united in marriage the *above named* and *described* parties, under the authority of the annexed license." In the said list of statistics, attested by the clerk, the

place of the wife's (the woman, Martha Ann Gray) birth is given as *Tazewell county*, Virginia, while in the certificate of facts by the court, the commonwealth proved that the party named Martha Gray was born in *Botetourt county*, Virginia.

Now, while this *discrepancy* in the testimony of the commonwealth, as to the birthplace of the woman, is wholly immaterial as to the violation of law by the prisoner Jones in marrying a *white person*, yet it is of the greatest importance, in its bearing upon the question of the color and identity of the woman whom the plaintiff in error, Jones, is charged with having married as a *white person*. The commonwealth proved that the party named Martha Gray was born in Botetourt county, Va., and was taken from the poor-house of that county when four years of age, and placed with one Kilmer, a white man; and afterwards with one Allen Harless, a white man; and that she passed for white, and that her mother was white; and that the said mother of Martha Ann Gray *had had a colored child* older than *said Martha;* and the commonwealth's attorney, during his concluding argument, stated that " he knew the residence of the mother of the said Martha Ann Gray; that it was in the county of Pulaski, Virginia; and that his reason for not summoning her was, that she had reformed and married a respectable man, and he did not want to expose her."

" The best evidence, the nature of the case will admit of, shall be required; and no evidence is admissible which, from the nature of the case, supposes a greater evidence behind and in the party's possession or power." (Buller's N. P. 293).

Here is the case of a criminal prosecution, where the commonwealth's atttorney voluntarily states (in a concluding argument too, to which the prisoner has no opportunity of reply), that he knew of the residence, in an adjoining county, of the mother of the woman, Martha Ann Gray, whose *color* and identity was the subject of dispute, and upon the proof of which the guilt or innocence of the prisoner depended, and that he had not summoned her for the prosecution. Perhaps, had she been

summoned and .introduced by the commonwealth, she might have testified that Martha Ann Gray was the *second* colored child whom she had borne (?) or was not her child at all. "A distinction is to be noted between *civil* and *criminal* cases, in respect to the degree or quantity of evidence necessary to justify the jury in finding their verdict for the government. In *civil* cases their duty is to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt; but in *criminal* trials the party accused is entitled to the presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in his favor. It is, therefore, a rule of criminal law that the guilt of the accused must be fully proved." 3 Greenleaf's Evidence, § 29. Upon the proof of the marriage—the *corpus delicti*—the commonwealth did not offer any evidence that the celebrant, Scheaffer, had given the bond and obtained the authority of the county court of Montgomery, which the law expressly requires as a qualification to solemnize the marriage ceremony; and this, even though the prosecution was in the county court, in whose clerk's office of Montgomery county the law requires the fact of qualification to be recorded. Nor, as before said, did the commonwealth offer any proof of *consummation* by the parties to the ceremony, in the belief, by either of them, that the celebrant was legally qualified. Upon this whole case we are of the opinion that the county court of Montgomery county erred in refusing to set aside the verdict and to grant the plaintiff a new trial, and that the circuit court of Montgomery county erred in affirming the judgment of the county court; and that the said judgments of both the said courts must be reversed and annulled, and the prisoner be awarded a new trial by the county court of Montgomery county.

HINTON, J., dissented.

JUDGMENT REVERSED.